IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **DAVID HULSEN, on behalf of himself and all others similarly situated** <br> **6641 Oak Street** <br> **Kansas City, Missouri 64113** <br><br>         **Plaintiff,** <br><br> vs. <br><br> **TOYOTA MOTOR CORPORATION** <br> **1, Toyota-cho, Toyota-city,** <br> **Aichi-ken, 471-8571, Japan** <br><br> And <br><br> **TOYOTA MOTOR SALES, U.S.A., INC.** <br> **Serve: Registered Agent** <br>   **CT Corporation System** <br>   **120 South Central Avenue** <br>   **Clayton, Missouri 63105** <br><br> And <br><br> **TOYOTA MOTOR ENGINEERING &** <br> **MANUFACTURING NORTH AMERICA, INC.** <br> **Serve: Registered Agent** <br>   **CT Corporation System** <br>   **120 South Central Avenue** <br>   **Clayton, Missouri 63105** <br><br>         **Defendants.** | Case No. _____ <br> Division No. _____ <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff David Hulsen, individually and on behalf of all others similarly situated, states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff David Hulsen is, and was at all relevant times, a citizen and resident of Kansas City, Jackson County, Missouri. Plaintiff owns a 2005 Toyota Tacoma which he purchased from Molle Toyota in Kansas City, Jackson County, Missouri in 2007.

2. Defendant Toyota Motor Corporation ("Toyota") is a Japanese company with its principal place of business in Japan. Defendant Toyota may be served at 1, Toyota-cho, Toyota-city, Aichi-ken, 471-8571, Japan.

3. Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota USA") is a California corporation with its principal place of business in California. Defendant Toyota USA may be served through its registered agent CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

4. Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("Toyota Manufacturing") is a Kentucky corporation with its principal place of business in Kentucky. Defendant Toyota USA may be served through its registered agent CT Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

5. This Court has personal jurisdiction over all both Toyota defendants pursuant to R.S.Mo. § 506.500, including but not limited to subsections (1), (2) and (3). Furthermore, Toyota USA and Toyota Manufacturing are registered to do business in this State and maintain registered agents for service of process in this State.

6. The Toyota defendants have substantial, systematic and continuous contact with this State such that the exercise of personal jurisdiction over these defendants is appropriate.

7. Defendant Toyota has purposefully availed itself to the privilege of conducting business within the United States and this State and has the requisite minimum contacts with the

United States and this State such that maintenance of this suit does not offend traditional notions of fair play and substantial justice and that defendant Toyota should reasonably anticipate being haled into Court here.

8. Venue is proper in this Court pursuant to Local Rule 3.2.

9. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d) because this is a class action and the amount in controversy exceeds the sum or value of $5,000,000.00, excluding interest and costs, and there is complete diversity between plaintiff and the defendants.

## **NATURE OF THE ACTION**

10. The Toyota defendants designed, manufactured, advertised, marketed and/or sold the Toyota and Lexus vehicles which are the subject of this action.

11. Beginning in the late 1998 and continuing through the present, the Toyota defendants designed, manufactured and/or sold vehicles certain vehicles with an Electronic Throttle Control System with Intelligence ("ETCS-I").

12. Toyota vehicles equipped with ETSC-i system, as designed and implemented by the Toyota defendants, are susceptible to incidents of sudden unintended acceleration.

13. The Toyota defendants did not incorporate appropriate failsafe designs into their ETCS-i equipped vehicles to ensure that the driver could safely control his or her Toyota vehicle in the event of a sudden unintended acceleration. One such failsafe design found in other manufacturers' vehicles with an electronic throttle is a brake override system which will bring the engine of the vehicle to idle if both the brake and accelerator pedals are applied.

14. In 2002, as the Toyota defendants began incorporating ETCS-i into a broader range of their vehicle lines, reports of sudden unintended and unwanted accelerations of Toyota vehicles began to increase significantly.

15. As the number of reported incidents of sudden unintended acceleration in ETCS-i equipped vehicles continued to increase, the crash, injury and death toll as a result of these incidents was increasing at an alarming rate. Despite their knowledge of these incidents, the Toyota defendants failed to disclose (and in some instances actively concealed and/or hid) information regarding these incidents to Missouri consumers and the National Highway Transportation Safety Association ("NHTSA"), continued to market ETCS-i equipped vehicles without incorporating appropriate failsafe designs and failed to warn Missouri consumers of their vehicles' propensity to sudden and uncontrollably accelerate without warning.

c. Reports involving a crash, injury, or fatality, based on claims against the manufacturer involving a death or injury; notices received by the manufacturer alleging or proving

16. Beginning in 2004, NHTSA launched investigation after investigation into various Toyota vehicles upon receiving numerous reports of sudden unintended acceleration from consumers:

a. In 2004, NHTSA opened a defect investigation (PE04-21) into 2002-2003 Camrys and Lexus ES300s upon receiving numerous reports of unwanted acceleration from consumers.

b. In 2005, NHTSA opened a defect petition investigation (DP05002) into 2002-2005 Camrys and Lexus ES models for unwanted acceleration.

c. In 2006, NHTSA opened a defect petition investigation (DP06003) into 2002-2006 Camry and Camry Solara vehicles for unwanted engine surging.

d. In 2007, NHTSA opened a defect investigation (EA07-010) into 2002-2008 Camrys and Lexus ES350s upon receiving numerous reports of unwanted acceleration from consumers.

e. In 2008, NHTSA opened a defect petition investigation (DP08001) into 2006-2007 Tacomas for unwanted acceleration.

f. In 2008, NHTSA opened a defect investigation (PE08-25) into Toyota Siennas for unwanted accelerations.

g. In 2009, NHTSA opened a defect investigation petition (DP09001) into 2007 Lexus ES350s for unwanted acceleration.

17. In response to NHTSA's investigations, the Toyota defendants consistently and repeatedly denied that the numerous reported complaints and incidents of sudden unintended or unwanted acceleration constituted a safety related defect or problem in any of its vehicles.

18. While failing to disclose the above-described information to Missouri consumers of Toyota vehicles, the Toyota defendants also undertook affirmative brand imaging through their marketing and advertising for their vehicles that was intended to create the perception of safety and reliability.

19. According to Safety Research Strategies based in Rehobath, Massachusetts, to date there have been 2,262 reported incidents of unintended acceleration in Toyota vehicles since 1999, which have resulted in 815 crashes, 341 injuries and 19 deaths.

20. Plaintiff first learned of his vehicle's propensity for sudden unintended acceleration and/or or that the Toyota defendants failed to provide appropriate failsafe designs

through the following series of recalls, safety warnings and/or statements issued by the Toyota and NHTSA to vehicle owners and/or the public in late 2009 and early 2010:

a. On or about October 5, 2009, Toyota issued floor mat recall 09V-388 covering 3.8 million vehicles to address unwanted acceleration problems in 2007-2010 Camry, 2005-2010 Avalon, 2004-2009 Prius, 2005-2010 Tacoma, 2007-2010 Tundra, 2007-2010 Lexus ES350 and 2006-2010 Lexus IS250 and IS350;

b. In response to the October 5, 2009 recall, NHTSA closed DP09001 on October 28, 2009. Shortly thereafter, on or about November 3, 2009, Toyota issued a statement characterizing the closing of NHTSA defect investigation petition DP09001 as proof that "no defect exists in vehicles in which the driver's floor mat is compatible with the vehicle and properly secured."

c. On or about November 4, 2009, NHTSA issued the following statement in response to Toyota's November 3rd statement that NHTSA's investigation was over:

"Toyota has announced a safety recall involving 3.8 million vehicles in which the accelerator pedal may become stuck at high vehicle speeds due to interference by the driver's side floor mat, which is obviously a very dangerous situation. Toyota has written to vehicle owners stating that it has decided that a safety defect exists in their vehicles and asking owners to remove all floor mats while the company is developing a remedy. We believe consumers should follow Toyota's recommendation to address the most immediate safety risk. However, removal of the mats is simply an interim measure, not a remedy of the underlying defect in the vehicles. NHTSA is discussing with Toyota what the appropriate vehicle remedy or remedies will be. This matter is not closed until Toyota has effectively addressed the vehicle defect by providing a suitable remedy."

d. On or about November 25, 2009, Toyota announced plans to reconfigure the accelerator pedal on 3.8 million vehicles going back to further address unwanted acceleration problems in 2007-2010 Camry, 2005-2010 Avalon, 2004-2009 Prius, 2005-2010 Tacoma, 2007-2010 Tundra, 2007-2010 Lexus ES350 and 2006-2010 Lexus IS250 and IS350.

e. On or about January 21, 2010, Toyota issued accelerator pedal recall 10-V017 covering 2.3 million vehicles to address unwanted acceleration problems in 2009-2010 RAV4, 2009-2010 Corolla, 2009-2010 Matrix, 2005-2010 Avalon, 2007-2010 Camry, 2010 Highlander, 2007-2010 Tundra and 2008-2010 Sequoia.

21. As a result of the Toyota defendants' unlawful and misleading business practices and their concealment, suppression and/or omission of material facts in connection with the marketing, advertising and sale of their vehicles, plaintiff has suffered harm which includes being deprived of the full use, benefit and value of his vehicle, including the difference in value between what plaintiff he paid for his Toyota vehicle and what he would have paid at the time of purchase had the defendants fully disclosed the dangers of sudden unintended acceleration inherent in his and the other Toyota Class Vehicles.

22. Furthermore, one of the Toyota defendants' main selling points for their vehicles is that they are safe and reliable. Plaintiff relied on the Toyota defendants' carefully crafted reputation for reliability and safety, the reputation it had created by its own affirmative brand imaging through its marketing and advertising, in selecting his Toyota vehicle over the competition.

23. Had the Toyota defendants disclosed the danger of serious injury or death as a result of the propensity of their vehicles to suddenly accelerate, the many sudden acceleration complaints they had received, the details of NHTSA's numerous defect investigations and/or the

7

fact of their incorporation of ETCS-i into the Class Vehicles without appropriate failsafe designs such as a brake override system, plaintiff would not have purchased his vehicle or would not have purchased the vehicle for as much he paid.

## CLASS ACTION ALLEGATIONS

24. Pursuant to Rule 23 and R.S.Mo. 407.025.3, plaintiff brings this class action on behalf of himself and a class of similarly situated persons (hereinafter the "Class") defined as follows: All Missouri residents who presently own or lease a Toyota or Lexus vehicle equipped with ETCS-i that they purchased or leased at any time between the five years immediately preceding the filing of this Complaint and the date the Court certifies this suit as a class action (hereinafter the "Class Vehicles").

25. Excluded from the Class are: (a) the defendants, including any parent, subsidiary, affiliate or controlled person of the defendants; (b) defendants' officers, directors, agents or employees; (c) the judicial officers assigned to this litigation, as well as and members of their staffs and immediate families; (d) all persons claiming personal injury or wrongful death as a result of a sudden acceleration of a Toyota vehicle; and (e) to the extent the class certification order permits exclusion, all persons who timely submit timely and otherwise proper requests for exclusion from the Class.

26. The proposed Class meets all requirements for class certification. The Class satisfies the numerosity standards. The Class is believed to number in the thousands of persons in the State of Missouri. As a result, joinder of all Class members in a single action is impracticable. Class members may be informed of the pendency of this Class action by published and broadcast notice.

27. There are questions of fact and law common to the Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from defendant's actions include, without limitation, the following:

a. Whether, in connection with the marketing and/or sale of the Class Vehicles, defendants concealed, suppressed, omitted or failed to disclose material facts, including the dangerous propensity of its vehicles to suddenly and, in some instances uncontrollably, accelerate without warning.

b. Whether defendants falsely and fraudulently misrepresented in its advertisements, marketing materials, promotional materials and other materials, among other things, the safety and reliability of the Class Vehicles;

c. Whether defendants failed to warn adequately of the dangers of the Class Vehicles;

d. Whether defendants designed, manufactured and/or sold Class Vehicles that were dangerously defective because they were prone to suddenly and uncontrollably accelerate without warning and failed to incorporate appropriate failsafe designs;

e. Whether defendants knew or should have known that the Class Vehicles were dangerous and prone to suddenly and uncontrollably accelerate without warning;

f. Whether defendants adequately tested the Class Vehicles prior to distribution and sales in the marketplace;

g. Whether defendants continued to manufacture, market, distribute and sell the Class Vehicles despite their knowledge of the Class Vehicles' dangerous nature;

h. Whether defendants knowingly omitted, suppressed or concealed material facts about the unsafe and/or defective nature of the Class Vehicles from NHTSA and/or the consuming public;

i. Whether defendants' conduct violated Missouri's Merchandising Practices Act;

j. Whether defendants' conduct justifies an award of punitive damages and attorneys' fees under Missouri's Merchandising Practices Act.

28. The questions set forth above predominate over any questions affecting only individual persons, and a Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

29. A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for defendant, and/or substantially impair or impede the ability of Class Members to protect their interests.

30. The plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. The interests of the members of the Class will be fairly and adequately protected by the plaintiff and his undersigned counsel, who have substantial experience prosecuting class action and product liability litigation.

31. Plaintiff specifically excludes from this class action any damages, losses or other relief of any kind arising from the personal injuries suffered by those Class members caused by

defects in the Class Vehicles. This class action seeks only the economic relief requested herein to which the Class members are entitled under the Missouri Merchandising Practices Act.

32. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impractical and undesirable for each member of the Class who suffered damage to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

33. Notice can be provided to the Class members by using techniques and forms of notice similar to those customarily used in other motor vehicle defect and complex class actions.

## COUNT I
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT

34. Plaintiff incorporates by reference the allegations in all paragraphs of this Petition as though fully set forth in this paragraph.

35. Plaintiff and members of the Class purchased and leased the Class Vehicles primarily for personal, family or household purposes.

35. The acts and practices engaged in by the Toyota defendants, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act, R.S.Mo. § 407.010 *et seq.*

36. The Toyota defendants engaged in unlawful and unfair practices including deception, false promises, misrepresentations and/or the concealment, suppression or omission of material facts in connection with the sale or advertisement of the Class Vehicles in violation of R.S.Mo. § 407.020.

11

37. As a result of plaintiff's purchase of a Class Vehicle and defendants' unlawful acts and violation of the Missouri Merchandising Practices Act, plaintiff suffered ascertainable loss in the form of economic damages in the amount of the difference in value between what plaintiff and the proposed Class members paid for the Class Vehicles and what they would have paid at the time of purchase or lease had the defendants fully disclosed the dangers of the Class Vehicles.

38. The conduct of the Toyota defendants as described herein was outrageous because of their evil motive and/or reckless indifference to the rights of others, including the plaintiff and members of the Class, entitling the plaintiff and Class members to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff requests that this Court enter an Order and/or Judgment against the defendants and in favor of the plaintiff and award the following relief:

A. Certifying the Class as requested herein;

B. Appointing The Kuhlman Law Firm, LLC as lead counsel for the Class;

C. Awarding Plaintiff and members of the proposed Class damages in the amount of the difference in value between what plaintiff and the proposed Class members paid for the Class Vehicles and what they would have paid at the time of purchase or lease had the defendants fully disclosed the dangers of the Class Vehicles and not violated the Missouri Merchandising Practices Act as described herein;

D. Awarding punitive damages in an amount to be determined at trial;

E. Awarding pre-judgment interest;

F. Awarding post-judgment interest;

G. Awarding attorneys' fees and costs;

H. Providing such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE KUHLMAN LAW FIRM, LLC


By: /s/ Chad C. Lucas
Bradley D. Kuhlman #42596
Chad C. Lucas #50822
1100 Main Street, Suite 2550
Kansas City, Missouri 64105
Telephone: (816) 799-0330
Facsimile: (816) 799-0336
brad@kuhlman-law.com
chad@kuhlman-law.com
**Attorneys for Plaintiff**